**Ted F. DUNHAM, Appellant,**

v.

**Morris L. STEPHENS, Appellee.**

**No. 16884.**

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 19, 1968.

Rehearing Denied Feb. 16, 1968.

John P. Ritchie, George M. Ritchie, Mineral Wells, for appellant.

Payne Roye and Gerald Weatherly, and Gerald Weatherly, Graham, for appellee.

OPINION

MASSEY, Chief Justice.

Morris L. Stephens, plaintiff, sued Ted F. Dunham, defendant, for damages for breach of contract to drill a well seeking oil or gas. Trial was to the court without a jury. Judgment was rendered for plaintiff for damages in the amount of $24,580.00. The defendant appealed.

Reversed and rendered.

The cause of action stated in plaintiff's petition was as follows:

"II. On or about the twenty-second day of June, 1966, plaintiff and defendant entered into a certain written contract, whereby defendant agreed to take a Farm Out

on land situated in Jack County, Texas, and agreed under said contract to commence the actual drilling of a well on said tract of land, said well to be drilled to the depth sufficient to penetrate the Ellenburger formation which is approximately 5,365 feet, and said drilling was to be commenced on or before midnight July 18, 1966. Plaintiff agreed and thereby became bound to assign an undivided one-half interest in and to said leasehold estate, containing 242.01 acres bearing proportionate part of a ⅟₁₆th of ⅞ths overriding royalty to be reserved in said agreement. * * * The defendant herein agreed in said agreement to be bound by the conditions, covenants, and stipulations which said agreement provides concerning the leasehold estate, which is the subject matter of this action. * * *

"VI. As the direct, proximate, and (on and immediately before June 22, 1966, as well as July 18, 1966) reasonably foreseeable result of defendant's said failure to perform said contract, plaintiff has been damaged in the total sum of $24,588, * * * because: If said contract had been performed, plaintiff would have (as was reasonably foreseeable by, and known to and in the contemplation of, both parties when said contract was made), as the direct, proximate, and then and there reasonably foreseeable result thereof, been enriched in the total sum of $24,580, because thereby the reasonable market value of plaintiff's one-half working interest in his leasehold of about 242 acres, described in the paragraph numbered 2 in said contract, would practically certainly have been increased from a value of $2420 to the value of $20,000, and the reasonable market value of plaintiff's subject ⅟₁₆ of ⅞ overriding royalty interest would practically certainly have been increased from a value of $1000 to the value of $8000—making a total enrichment of $24,580, which plaintiff, as aforesaid, irretrievably lost as the aforesaid direct result of defendant's nonperformance of said contract, to plaintiff's aforesaid damage of $24,580 with legal interest thereon from July 18, 1966. More-

over, plaintiff at all times has been and is wholly unable in any manner to reduce or prevent this damage which resulted from defendant's nonperformance of his said contract. And, for any and all work, expense, and trouble which his performance of his said contract might have required, defendant would have been compensated as provided in the paragraph numbered 3 in his said contract."

By reference to the contract, which was made a part of plaintiff's petition and also introduced in evidence on trial, it is noticed that the defendant was to receive the interest stated in plaintiff's petition after the well was completed and then only subject to condition, the condition being that the same be completed as a producing well with all the necessary equipment required to produce said well.

■ Nevertheless we overrule the third of the defendant's points of error wherein he contends that the contract was no more than an option contract and not an absolute binding operation to drill a well. Application of the tests appropriate to the determination of the rights, duties and obligations for which the contract made provision satisfies us that defendant was thereby obligated to make performance by actually drilling, the commencement to be on or before midnight on July 18, 1966.

■ Though plaintiff's case was proved according to and under the pleadings the measure of damages therein stated and upon which the judgment was rendered was erroneous. The allegations and proofs were incomplete in that there was no showing that plaintiff would have (in the event defendant had begun drilling operations as provided by the contract) sold his unencumbered interest—which would or could have been retained subject to complete control by him in the event the drilling operations resulted in a producing well—at such appropriate time as would have enabled him to realize the "enrichment" which he alleged in his petition. It is neither affirmatively shown that plaintiff would have

made such character of sale during the time drilling operations proceeded as would have enabled him to obtain the alleged enrichment nor that it was within the contemplation of the parties at the time they entered into the contract that plaintiff's aforesaid interest or any part thereof would be sold.

It was shown, however, by plaintiff's own testimony, that at the material time he had not decided whether he would sell or attempt · to sell. In said respect he testified, "Well, I wasn't planning on keeping it either, I was just going to wait until they got started drilling." We do not believe that it could be said to have been reasonably foreseeable at any material time that as the result of the defendant's failure to perform under the contract the plaintiff would sustain damages by reason of a resulting failure to make a profit by consummating a sale. Furthermore there was no evidence from which any inference might be made that any such sale could have been consummated. For want of evidence in said respects we would be obliged to hold against the plaintiff even if there was no question of propriety or insufficiency in his pleadings.

A recent case bearing upon the law applicable in a case such as this is Martin v. Darcy, 357 S.W.2d 457, 4 A.L.R.3d 278 (San Antonio Civ.App.1962, writ ref. n. r. e.).

The reported case is followed in 4 A.L.R.3d 284 by the Annotation: "Right and Measure of Recovery For Breach of Obligation to Drill Exploratory Oil or Gas Wells". In addition to those authorities cited in Martin v. Darcy, supra, the defendant has cited as applicable the cases of Fain v. Texas-Hanover Oil Company, 354 S.W.2d 949 (Austin Civ.App.1962, writ ref. n. r. e.); Logan v. Elliott, 61 S.W.2d 157 (Fort Worth Civ.App.1933, writ dism.); Riddle v. Lanier, 136 Tex. 130, 145 S.W.2d 1094 (1941); and Westgate-Greenland Oil Co. v. Mack, 164 S.W.2d 31 (San Antonio Civ.App.1942, writ ref. w. o. m.).

We do not consider as applicable authority the cases cited by the plaintiff predicated upon principles of law applicable to damages resulting by reason of undelivered or improperly messaged telegrams. Other authorities cited by plaintiff we consider to support rather than to contradict those of the defendant. Particularly do we believe that to be true as applied to Restatement of the Law, Contracts, Secs. 329 to 332, inclusive, especially Sec. 331, "Degree of Certainty Required in Establishing the Amount of Profits and Losses; Alternative Methods".

Judgment of the trial court is reversed and judgment here rendered in behalf of the defendant and that the plaintiff take nothing by his suit.